**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**BRIAN McMULLIN AND DAWN
McMULLIN, individually; and DAWN
McMULLIN, as Special Personal Representative
of the Estate of Garrett Lee McMullin, Deceased**                                    **PLAINTIFFS**

**v.**                                  **CASE NO. 3:06-CV-00172 GTE**

**UNITED STATES**                                                      **DEFENDANT**

<u>**ORDER ON COLLATERAL SOURCE ISSUE**</u>

In Defendant's Trial Brief, the Government raises the issue of whether Plaintiffs can

establish the reasonable value of the medical services provided Garrett McMullin by introducing

bills submitted by medical care providers.  The parties agree that Arkansas law, the law of the

state where the claim accrued, governs.  28 U.S.C. § 2674.

The Government states that Garrett McMullin's medical bills were paid by Medicaid.

The Government further states that the health care providers entered into agreements providing

that they will not collect from the medicaid patient or any other source the difference between the

charges billed and the amount paid by Medicaid, with the exception of certain co-payments and

deductibles.  Therefore, the amount paid pursuant to Medicaid agreements is significantly less

than the amount shown on the bills.  Defendant contends that the reasonable value of the medical

services is the amount actually paid by Medicaid, and the collateral source rule is inapplicable.

Plaintiffs contend that the application of the collateral source rule is not a developing area of the

law in Arkansas, which holds firmly to the rule, and that the collateral source rule applies in this case.[1]

The Arkansas Supreme Court has held that "the collateral-source rule applies unless the evidence of the benefits from the collateral source is relevant for a purpose other than the mitigation of damages." *Montgomery Ward & Co., Inc. v. Anderson*, 334 Ark. 561, 564, 976 S.W.2d 382, 383 (1998) (citing *Parrish v. Newton,* 298 Ark. 404, 768 S.W.2d 17 (1989)). "A trial court must 'exclude evidence of payments received by an injured party from sources 'collateral' to . . . the wrongdoer, such as private insurance or government benefits. . . .'" *Id.*, 976 S.W.2d at 383-84 (citing *Bell v. Estate of Bell,* 318 Ark. 483, 490, 885 S.W.2d 877, 880 (1994); *Green Forest Public Schools v. Herrington,* 287 Ark. 43, 696 S.W.2d 714 (1985); *Patton v. Williams,* 284 Ark. 187, 680 S.W.2d 707 (1984); *Evans v. Wilson,* 279 Ark. 224, 650 S.W.2d 569 (1983)). "Recoveries from collateral sources 'do not redound to the benefit of a tortfeasor, even though double recovery for the same damage by the injured party may result.'" *Id.*, 976

---

[1]The Court recognizes that Arkansas Code Annotated § 16-114-208(a)(1)(B) provides:

Any evidence of damages for the cost of any necessary medical care, treatment, or services received shall include only those costs actually paid by or on behalf of the plaintiff or which remain unpaid and for which the plaintiff or any third party shall be legally responsible.

However, this portion of the act only came into effect in 2003 as part of the Civil Justice Reform Act.  Furthermore, Plaintiffs have submitted a number of trial court opinions finding this provision in violation of the Arkansas Constitution.  Defendant has not refuted these arguments against the application of this statute.

S.W.2d at 384 (citing *Bell v. Estate of Bell,* 318 Ark. at 490, 885 S.W.2d at 880; *Green Forest v.*

*Herrington,* 287 Ark. at 49, 696 S.W.2d at 718)).[2]

Generally, Arkansas courts have found that a plaintiff's recovery from a tortfeasor "is not

limited or offset by the amounts or services, if any, the plaintiff receives from his insurance

company for property damages or medical bills, from his employer for lost pay, or from his

church or neighbors for meals or child care."  Howard W. Brill, *Arkansas Law of Damages*, § 6:4

(5th ed. 2004) (citing *East Texas Motor Freight Lines, Inc. v. Freeman*, 289 Ark. 539, 713

S.W.2d 456 (1986) (vacation pay and sick leave)).  "The recovery is undiminished by any sums

received under workers' compensation or from disability payments from his employer or

insurer."  *Id.* (citing *Evans v. Wilson*, 279 Ark. 224, 650 S.W.2d 569 (1983); *Swindle v.*

*Thornton*, 229 Ark. 437, 316 S.W.2d 202 (1958)).  "Likewise, unemployment compensation and

pensions are within the collateral source rule."  *Id.* (citing *Peters v. Pierce*, 314 Ark. 8, 858

S.W.2d 680 (1993); *Mapco, Inc. v. Payne*, 306 Ark. 198, 812 S.W.2d 483 (1991); *Green Forest*

*Public Schools v. Herrington*, 287 Ark. 43, 696 S.W.2d 714 (1985)).  "The forgiveness of a debt

for medical services by a collateral source comes within the scope of the rule; likewise gratuitous

---

[2]The Arkansas Supreme Court has recognized four situations in which a collateral source of recovery may be introduced as follows: "(1) to rebut the plaintiff's testimony that he or she was compelled by financial necessity to return to work prematurely or to forego additional medical care; (2) to show that the plaintiff had attributed his condition to some other cause, such as sickness; (3) to impeach the plaintiff's testimony that he or she had paid his medical expenses himself; (4) to show that the plaintiff had actually continued to work instead of being out of work, as claimed."  *Anderson*, 334 Ark. at 566, 976 S.W.2d at 385 (noting that the Court has also allowed evidence of collateral sources when the plaintiff opens the door to his or her financial condition) (citing *Babbitt v. Quik-Way Lube & Tire, Inc.,* 313 Ark. 207, 853 S.W.2d 273 (1993); *Younts v. Baldor Electric Co.,* 310 Ark. 86, 832 S.W.2d 832 (1992) *Evans v. Wilson,* 279 Ark. 224, 650 S.W.2d 569 (1983)).  The Government does not allege that any one of these exceptions apply.

medical services do not reduce the amount of plaintiff's recovery." *Id.* (citing *Anderson*, 334 Ark. 561, 976 S.W.2d 382) (hospital discounted bill by 50%; no reduction in judgment against tortfeasor)).

The Arkansas Supreme Court has refuted criticism of the rule by explaining that "in these cases the courts measure 'compensation' by the total amount of the harm done, even though some of it has been repaired by the collateral source, not by what it would take to make the plaintiff whole." *Anderson*, 334 Ark. 565, 976 S.W.2d at 384 (quoting *Bell,* 318 Ark. at 490, 885 S.W.2d at 880 (quoting F. HARPER, ET AL., THE LAW OF TORTS § 25.22, at p. 651 (2d ed.1986))). The Court also stated "that the rule had been extended to cases in other areas of the law, such as unemployment compensation received during a period later held to have resulted from a wrongful discharge under the Teacher Fair Dismissal Act." *Id.* (citing *Green Forest v. Herrington,* 287 Ark. at 49, 696 S.W.2d at 718). The Court also quoted *East Texas Motor Freight Lines, Inc. v. Freeman,* 289 Ark. 539, 713 S.W.2d 456 (1986), in which "a defendant argued that the collateral-source rule was inequitable because it resulted in a windfall to the plaintiff," and the Court disposed of the argument by explaining the policy behind the rule as follows:

> Whether she received the money from her employer or from an insurance policy, she, rather than the alleged tortfeasor, is entitled to the benefit of the collateral source, even though in one sense a double recovery occurs. *Vermillion v. Peterson,* 275 Ark. 367, 630 S.W.2d 30 (1982). The law rationalizes that the claimant should benefit from the collateral source recovery rather than the tortfeasor, since the claimant has usually paid an insurance premium or lost sick leave, whereas to the tortfeasor it would be a total windfall.

*Id.*

4

The Court in *Anderson* chose "to adopt the rule that gratuitous or discounted medical services are a collateral source not to be considered in assessing the damages due a personal-injury plaintiff." *Id*. at 567, 976 S.W.2d at 385.  The Court held that the trial court did not err in excluding evidence of a discount as a collateral source, stating "It is the rule recommended by the Restatement (Second) of Torts, and it is consistent with our oft-stated policy of allowing the innocent plaintiff, instead of the tortfeasor defendant, to receive any windfall associated with the cause of action." *Id*. at 567-58, 976 S.W.2d at 385.  "The rule has also been justified on the basis that it assists the plaintiff in paying attorney fees."  Howard W. Brill, *Arkansas Law of Damages*, § 6:4 (5th ed. 2004).

The Court notes that while some courts have held that Medicaid payments are within the collateral source rule and may not be deducted from a plaintiff's recovery, there is authority to the contrary.  *See* Natalie J. Kussart, *Paid Bills v. Charged Bills: Insurance and the Collateral Source Rule* Arthur v. Catour, 833 N.E.2d 847 (2005), 31 S. Ill. U. L.J. 151, 156 -158 (2006) (citing cases). For example, in *Bennett v. Haley*, 132 Ga. App. 512, 208 S.E.2d 302, 77 A.L.R.3d 353 (1974), the Georgia Court of Appeals upheld the trial court's refusal to admit evidence that the hospital and medical bills were paid for by Medicaid.  The court noted, "The Medicaid program is social legislation; it is the equivalent of health insurance for the needy; and, just as any other insurance form, it is an acceptable collateral source."  *Id*. at 524, 208 S.E.2d at 311.

28 U.S.C. § 2674 provides, "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ."  The stated policy of the Federal Tort Claims Act is that the Government is to be held liable in the same manner and to the same extent as a private

individual under like circumstances.  Here, it is important to note that had Plaintiffs been able to pursue the cause of action in a state court proceeding against Dr. Buxton, rather than under the Federal Tort Claims Act, the defendant would not be in a position to argue that the source was primary, rather than collateral.  Furthemore, this case is complicated by the fact that the Government wears two hats.  If one accepts the analogy of Medicaid as health insurance for the needy, the Government essentially acts as Plaintiff's insurance provider.  The Government also plays the role of tortfeasor by way of the Federal Tort Claims Act.  In a typical insurance case, the plaintiff insured would be allowed to recover the full amount of the medical expenses billed, while the plaintiff's insurer's could only recover, though subrogation, the amount it paid.[3]  The tortfeasor would be left paying the full amount of medical expenses billed, even though it may result in a windfall to the plaintiff.  The Court sees no reason why the Plaintiffs should be treated differently than other recipients simply because the government happens to be occupying the role of tortfeasor in this case.

The Court is of the opinion that if faced with this issue, the Arkansas Supreme Court would find that the collateral source rule applies to this case, as it is primarily a rule of substantial justice.  While the Court finds that the collateral source rule applies in this case, this case will be tried to the Court.  Therefore, during the trial, the Government will be allowed to submit the actual amounts paid by Medicaid for the record on appeal.

---

[3]The Court notes that in the event the Plaintiff recovers the medical expenses sought, it appears that the proper way to recover the amount paid by Medicaid is to follow the procedures necessary to execute the lien on Plaintiff's recovery. *See* Ark. Code Ann. § 20-77-307.

The Court's opinion may appear to be inconsistent with the Eighth Circuit's ruling in *Overton v. United States*, 619 F.2d 1299 (8th Cir. 1980). However, the Eighth Circuit in *Overton* based its ruling upon Missouri's application of the collateral source rule. The Arkansas Supreme Court has applied the collateral source rule without the qualifications that the Missouri Supreme Court has imposed. *See Hamilton v. Slover*, 440 S.W.2d 947, 958 (Mo. 1969).[4]

Accordingly,

IT IS HEREBY ORDERED THAT Plaintiffs can establish the reasonable value of the medical services provided Garrett McMullin by introducing bills submitted by medical care providers.

IT IS SO ORDERED this 12th day of September, 2007.

/s/Garrett Thomas Eisele
UNITED STATES DISTRICT JUDGE

---

[4]In *Anderson*, the Court emphasized that the "law rationalizes that the claimant should benefit from the collateral source recovery rather than the tortfeasor, since the claimant has usually paid an insurance premium or lost sick leave, whereas to the tortfeasor it would be a total windfall." 334 Ark. at 565, 976 S.W.2d at 384. The Court further stated that there was no evidence in the case to suggest that the tortfeasor "had anything to do with procuring the discount" of the plaintiff's hospital bill, and therefore, "the rationale of the rule favors [the plaintiff], just as it would had she been compensated by insurance for which she had arranged." *Id*. Similarly, in *Moore v. Pulaski County Special School Dist*., 73 Ark. App. 366, 374-75, 43 S.W.3d 204, 210-11 (2001), the Arkansas Court of Appeals found that the trial court's deduction of a teacher's disability retirement income from an award violated the collateral source rule. In so holding, however, the court focused on the fact that the teacher retirement disability payments were not paid by the tortfeasor school district, but by the Arkansas Teacher Retirement System, a third party. *Id*. The court noted that when a teacher receives an award of back pay after drawing retirement, the Arkansas Teacher Retirement System seeks a refund of those amounts paid to the teacher. *Id*. The Court recognizes that there is an argument to be made that based upon the Court's focus in these cases, a different result might be reached if the defendant/tortfeasor was responsible for the payment of the medical expenses. However, the Court also notes the Arkansas Supreme Court's consistent application of the collateral source rule.