**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**BRIAN McMULLIN AND DAWN
McMULLIN, individually; and DAWN
McMULLIN, as Special Personal Representative
of the Estate of Garrett Lee McMullin, Deceased**                    **PLAINTIFFS**

**v.**                    **CASE NO. 3:06-CV-00172 GTE**

**UNITED STATES**                                                     **DEFENDANT**

## ORDER ON MOTION IN LIMINE

Presently before the Court is Defendant's Motion in Limine, which seeks to exclude the testimony of Dr. Steven L. Shore regarding the standard of care. Specifically, Defendant argues that Dr. Shore, a board certified pediatrician practicing in Atlanta, Georgia, is not familiar with the standard of care in rural Arkansas.

In Arkansas, the standard of care incorporates the locality rule. At the time of the accural of this cause of action, the burden of proof on the locality rule was as follows:

(a) In any action for medical injury, the plaintiff shall have the burden of proving:

(1) The degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he practices or in a similar locality . . .

Ark. Code Ann. § 16-114-206.[1]  The leading case on the locality rule is *Gambill v. Stroud*, 258 Ark. 766, 531 S.W.2d 945 (1975).

In *Gambill*, the Arkansas Supreme Court was called upon to decide whether it should modify the prevailing "same or similar locality" rule in malpractice cases, by which a physician is held only to the standard of competence that obtains in his own locality or in a similar locality. *Id*. at 767, 531 S.W.2d at 947.  The Court stated:

> The rule we have established is not a strict locality rule. It incorporates the similar community into the picture. The standard is not limited to that of a particular locality. Rather, it is that of persons engaged in a similar practice in similar localities, giving consideration to geographical location, size and character of the community. Restatement of the Law, Torts, 2d, 75 Comment g, s 299A. **The similarity of communities should depend not on population or area in a medical malpractice case, but rather upon their similarity from the standpoint of medical facilities, practices and advantages.** *See Sinz v. Owens*, 33 Cal.2d 749, 205 P.2d 3, 8 A.L.R.2d 757 (1949). . . . The extent of the locality and the similarity of localities are certainly matters subject to proof. Modern means of transportation and communication have extended boundaries but they have not eliminated them. *See Sinz v. Owens*, *supra*; *Tvedt v. Haugen*, 70 N.D. 338, 294 N.W. 183, 132 A.L.R. 379 (1940). The opportunities available to

---

[1]Defendant sets forth the standard of care as follows:
(a) In any action for medical injury, when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving:

(1) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant, the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he or she practices or in a similar locality . . .

Ark. Code Ann. § 16-114-206 (2007) (effective March 25, 2007).  Defendant has submitted no authority for the proposition that this statute, which was passed after the accrual of the cause of action in this case, would apply retroactively.

practitioners in a community are certainly matters of fact and not law and may be shown by evidence under our own locality rule.

Our locality rule is well expressed in Restatement of the Law, Torts 2d (1965) 73, s 299A, viz:

> Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.

It is fallacious to say that our locality rule permits a doctor in one place to be more negligent than one in another place. It is a matter of skill that he is expected to possess, i.e., the skill possessed and used by the members of his profession in good standing, engaged in the same type of practice in the locality in which he practices, or a similar locality. The similar locality rule prevents highly incompetent physicians in a particular town from setting a standard of utter inferiority for the practice of medicine there. Restatement of the Law, Torts 2d, 75, Comment e, s 299A. *See also* 3 Sherman & Redfield on Negligence 1532, s 617 (1941).

One of the ideas suggested in appellants' argument is that a national standard of care should be observed. This is also unrealistic. We cannot accept that premise as a matter of law and we certainly do not take the theory that such a standard exists to be so well established that it can be judicially noticed. If it does factually exist to any extent, or in any case, then certainly it can be shown by evidence. If the medical profession recognizes that there are standard treatments, which should be utilized nation-wide this fact should be readily susceptible of proof under the similar locality rule, because the skill and learning should be the same and all localities would be similar. [Citations omitted]  The same may be said for any region exceeding the boundaries of a particular city or town. This is much more likely to be true in cases where a specialist, and not a general practitioner like Dr. Stroud, is involved. [Citations omitted]

. . .

One of the difficulties with the strict locality rule was the tendency to apply it as a rigid, exclusionary rule of evidence, rather than a definition of a standard of care required of a physician. Of course the standard does necessarily have a relationship to the admissibility of evidence. *See Couch v. Hutchison*, 135 So.2d 18 (Fla. App., 1961). But the similar locality rule is not necessarily so restrictive, and an expert witness need not be one who has practiced in the particular locality or who is intimately familiar with the practice in it in order to be competent to testify if the appropriate foundation has been laid to show that he is familiar with the standards of practice in a similar locality, either by his testimony or by other

evidence showing the similarity of localities.

*Id*. at 770, 531 S.W.2d at 948-50 (emphasis added).

Recently, the Arkansas Supreme Court has stated:

This court has held that an expert need not be familiar with the practice in the particular locality, but must demonstrate a familiarity with the standard of practice in a similar locality, either by his testimony or by other testimony showing the similarity of localities. *See Wolford v. St. Paul Fire & Marine Ins. Co.,* 331 Ark. 426, 961 S.W.2d 743 (1998); *Corteau v. Dodd,* 299 Ark. 380, 773 S.W.2d 436 (1989); *Gambill v. Stroud,* 258 Ark. 766, 531 S.W.2d 945 (1976). In *Corteau, supra,* this court affirmed a trial court's grant of summary judgment to the defendant doctors where the plaintiff's expert's affidavit "contained nothing about his having knowledge as to how a radiologist in a community like North Little Rock should have interpreted" an x-ray requisition. *Corteau,* 299 Ark. at 386, 773 S.W.2d at 439. Similarly, in *Young v. Gastro-Intestinal Center, supra,* this court held that the plaintiff did not establish the standard of care when her expert witnesses, a doctor and nurse from Texas, failed to testify regarding the standard of care in Little Rock. *Young,* 361 Ark. at 213, 205 S.W.3d at ----.

*Mitchell v. Lincoln*, 366 Ark. 592 (2006) (affirming summary judgment in favor of physician because expert physician's affidavit did not set forth the standard of care in Baxter County).

Additionally, in *First Commercial Trust Co. v. Rank*, 323 Ark. 390, 400, 915 S.W.2d 262, 267 (1996), the Arkansas Supreme Court held that the trial court abused its discretion in excluding the medical expert testimony of Dr. Epstein, finding that Panama City, Florida was not sufficiently dissimilar to Hot Springs to disqualify the expert from testifying about child abuse. "Dr. Epstein testified that Panama City had a population of approximately 80,000 people," and "that in terms of the medical facilities available, Panama City was 'very similar' to Hot Springs and that he was unaware of any facilities needed to detect possible child abuse that would have been available in Panama City but not available in Hot Springs." *Id*. at 396, 915 S.W.2d at 264-65. He further testified that "he was familiar with the type of practice in which Dr. Stecker was

4

involved." *Id*. at 396-97, 915 S.W.2d at 265.  Subsequently, Dr. Stecker testified as to the medical community in Hot Springs, hospital facilities, number of physicians, and available equipment.  *Id*. at 397, 915 S.W.2d at 265.  Dr. Epstein then testified that based upon the testimony of Dr. Stecker, and after review of a Hot Springs telephone book, Panama City was a comparable locality to Hot Springs and had a comparable range of specialties and subspecialties. *Id*. at 398, 915 S.W.2d at 265.

>The Court stated:
>
>An expert witness need not be one who has practiced in the particular locality, or one who is intimately familiar with the practice in it in order to be qualified as an expert in a medical malpractice action, "if an appropriate foundation is established to demonstrate that the witness is familiar with the standard of practice in a similar locality, either by his testimony or by other evidence showing the similarity of localities."

*Id*. at 401, 915 S.W.2d at 267 (citing *White v. Mitchell*, 263 Ark. 787, 568 S.W.2d 216 (1978)).

The Court also stated:

>Here, . . . the trial court was provided evidence of similar localities through the testimony of Dr. Stecker and Dr. Epstein.  There is, too, the irresistible suggestion that whether child abuse was evident is a question that spans localities irrespective of size and available technology. We further do not believe that by being called to proffer testimony about practice in Hot Springs Dr. Stecker was forced to be an expert against herself as contemplated by Ark. Code. Ann. § 16-114-207(3) (1987)."

*Id*.

Defendant argues that Plaintiffs may not use Dr. Buxton's testimony to establish Dr. Shore's knowledge of the standard of care.  In support of its argument, Defendant cites Arkansas Code Annotated § 16-114-207(3), which provides, "In any action for medical injury . . . No

medical care provider shall be required to give expert opinion testimony against himself for herself as to any of the matters set forth in § 16-114-206 at a trial. However, this shall not apply to discovery. Discovery information can be used at trial as in other lawsuits."

Defendant argues that Dr. Shore is attempting to use the testimony from Dr. Buxton's deposition in an effort to circumvent the prohibition on requiring a defendant to be an expert witness against himself. Defendant notes that Dr. Shore's affidavit states:

9. Dr. Buxton states in his deposition that he was taught in medical school to not treat patients any differently if the patient was in Vanderbilt in Nashville, Tennessee, than if the patient was in Pocahontas.

10. Dr. Buxton states in his deposition that residents were not trained in his pediatric residency program differently depending on whether they were going to practice in a metropolitan or rural area.

12. Dr. Buxton states in his deposition that the standard of care would be the same for him in evaluating and treating a child presenting as did Garrett as the standard of care would be for such child presenting to a pediatrician anywhere.

13. Dr. Buxton recognized that generally accepted medical textbooks as authoritative, including Rudolph's and Nelson's texts, which describe the examination, diagnosis, lab testing and treatment for a child such as Garret[t] McMullin that are appropriate. These texts describe proper care for a patient such as Garret[t] McMullin wherever the child is located, which includes the use of blood cultures which Dr. Buxton admitted he could have performed and had analyzed in a timely fashion had he chosen to do so.[2]

Defendant recognizes that Dr. Shore may use factual statements from Dr. Buxton's deposition to form his opinion. However, Defendant argues that Dr. Shore may not rely upon Dr. Buxton's conclusions regarding the effect of those facts in establishing the standard of care in Pocahontas, and therefore, any conclusions regarding the applicable standard of care resulting

---

[2]Exhibit B, Shore Supp. Aff. p. 6-7, Defendant's Motion in Limine.

from Dr. Buxton's nonfactual statements must therefore be disregarded in determining whether Dr. Shore has established his knowledge of the applicable standard of care in Pocahontas.

In his deposition, Dr. Shore testified that he had "practiced in small communities around Atlanta" in the 1970s doing "locum tenens."[3] He also testified that he believed that the Randolph County Medical Center, where Garrett McMullin was sent, was near Pocahontas, and that "they were able to do either on premises or close by things like CBC's, SED rates, chemistry panels and blood cultures."[4] Dr. Shore's supplemental affidavit recites facts regarding the physicians and surgeons in Pocahontas, Arkansas, as well the demographics and hospital facilities there.[5] In his supplemental affidavit, Dr. Short stated:

> 6.   Although I have never been to Pocahontas, Arkansas, the accepted standard of practice and medical care for a board certified general Pediatrician in an office practice in Pocahontas, such as Dr. Buxton, while evaluating and caring for a child presenting as did Garrett L. McMullin, with his Cyanotic congenital heart disease and palliative corrective shunts, is the same as it would be for me in my office practice in suburban Atlanta, or for any pediatrician located anywhere in the United States.
>
> 7.   There is nothing that Dr. Buxton would have needed to have available to him in or from his office in Pocahontas to adequately examine or evaluate Garret[t] McMullin during his February, 2002, illness that he did not have. Dr. Buxton testified that he had laboratory facilities in his own office for CBC, and had the ability to take stool specimens. Dr. Buxton testified he had send-out laboratory facilities available through Quest Laboratory serviced by couriers two times per day. As soon as any lab test results done at these outside labs were completed, they could have been called to or faxed to Dr. Buxton's office almost immediately. Dr. Buxton also knew that the pediatric cardiologists at Arkansas Children's Hospital were

---

[3]Exhibit A, Shore Dep. p. 6, Defendant's Motion in Limine.

[4]Exhibit A, Shore Dep. p. 7, Defendant's Motion in Limine.

[5]Exhibit B, Shore Supp. Aff. p.3-4, Defendant's Motion in Limine.

> intimately involved in Garret[t]'s care and Dr. Buxton could have called these cardiologists at any time to ask for advice from them regarding this child's care had he chosen to do so.

> 14. In my opinion, Pocahontas, Arkansas is a similar locality to where I practice in suburban Atlanta, in terms of the services needed to properly diagnose a child presenting such as Garret[t] McMullin, and the standard of care sould be the same for Dr. Buxton in Pocahontas as for me in suburban Atlanta, or wherever such a child would present to a board certified pediatrician. The only service readily available to me that was not available to Dr. Buxton is a pediatric echocardiography, but this service is not necessary to diagnose infective bacterial endocarditis.[6]

The Arkansas Supreme Court has indicated that the extent of the application of the locality rule and its relationship to a national standard of care may depend upon the specific facts of the case. *See Rank*, at 401, 915 S.W.2d at 267 ("There is, too, the irresistible suggestion that whether child abuse was evident is a question that spans localities irrespective of size and available technology."); *Gambill*, 258 Ark. at 770, 531 S.W.2d 945 ("If [a national standard of care] does factually exist to any extent, or in any case, then certainly it can be shown by evidence. If the medical profession recognizes that there are standard treatments, which should be utilized nation-wide this fact should be readily susceptible of proof under the similar locality rule, because the skill and learning should be the same and all localities would be similar.").

The Court emphasizes that in determining whether the communities are similar, it focuses on whether both communities are similar in their available medical facilities, practices and advantages. Here, according to the testimony of Dr. Shore, Dr. Buxton had the same facilities, practices, and advantages available to him in Pocahontas, Arkansas, that Dr. Shore would have suburban Atlanta that would have been necessary to properly diagnose Garrett McMullin. Dr.

---

[6]Exhibit B, Shore Supp. Aff. p. 5-6, 8, Defendant's Motion in Limine.

Shore testified that running basic tests, which were available to Dr. Buxton, would have indicated the proper diagnosis of Garrett McMullin.  Therefore, Defendant's Motion in Limine is denied.

Accordingly,

IT IS HEREBY ORDERED THAT Defendant's Motion in Limine (Docket No. 26) shall be, and it is hereby, DENIED.

IT IS SO ORDERED this 14th day of September, 2007.

/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE